NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

CHARLES TERMINI, *Appellant*.

No. 1 CA-CR 24-0533

FILED 03-05-2026

Appeal from the Superior Court in Maricopa County
CR2022-001579-001
The Honorable Joseph Kiefer, Judge
The Honorable Justin Beresky, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph E. Begun
*Counsel for Appellee*

Law Offices of Rhonda Neff, PLLC, Phoenix
By Rhonda Elaine Neff
*Counsel for Appellant*

_____

## MEMORANDUM DECISION

Presiding Judge Daniel J. Kiley delivered the decision of the Court, in which Judge D. Steven Williams and Judge Cynthia J. Bailey joined.

_____

**K I L E Y**, Judge:

**¶1** Charles Adam Termini appeals his convictions and sentences for sexual assault and sexual abuse. Because he has failed to establish error, much less reversible error, we affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2** At all relevant times, Termini lived in Surprise with his wife "Maria" and his adult stepdaughter "Tessa."[1] Viewed in the requisite "light most favorable to upholding the jury's verdicts," *State v. Copeland*, 253 Ariz. 104, 108, ¶ 2 (App. 2022), the evidence in the record shows that on five occasions between September 2021 and January 2022, Termini entered Tessa's bedroom and engaged in sexual contact with her while she slept.

**¶3** The first occasion occurred one afternoon in September 2021, when Termini entered Tessa's room while she was napping. Termini placed his hand on her breast over her shirt. Tessa awoke and Termini hastily left the room. Tessa did not tell anyone what Termini had done.

**¶4** Roughly a week later, Tessa was taking another afternoon nap when Termini again entered her room. As Tessa later recalled, he bent down and "kiss[ed her] on the lips" while simultaneously "squeez[ed]" her breast under her shirt. She woke up, "pushed [Termini] off of [her] and . . . asked him what he was doing." Termini left the room without responding.

**¶5** Tessa told her mother about the two incidents and, together, they confronted Termini. Termini denied Tessa's accusations.

**¶6** Maria ordered a motion-sensing video camera, which she referred to as a "nanny cam," from Amazon on December 28, 2021. When

_____

[1] We use pseudonyms to protect the victim's identity. *See* Ariz. R. Crim. P. 31.10(f).

it arrived a few days later, Maria gave it to Tessa, who set it up on a shelf in her room.

¶7            The third incident occurred one evening after Tessa, who often suffered from insomnia, took a sleep aid before turning in for the night.[2] She was asleep with her feet sticking out from under the covers when Termini entered her room and stood by the foot of the bed. He lowered his pants, put his exposed penis between Tessa's feet, and "mov[ed] himself up and down" her feet. As Tessa later explained, she was "awake enough" to "realize[] what was happening" but too groggy to "move or do anything about it." Termini left the room after about "10 to 15 minutes." As Tessa later testified, she checked the camera but found it had not recorded the incident, evidently because she had not set the camera up properly. Tessa told her mother, who told Tessa that she would talk to Termini about it.

¶8            After that, Tessa testified, she "definitely made sure" that the camera "was properly hooked up[.]"

¶9            During the early morning hours of January 18, 2022, Termini again entered Tessa's bedroom. Because she was ill with COVID-19, Tessa had taken medication that "made [her] super drowsy[.]" As she later recalled, she was "drift[ing]" in and out of sleep when she felt Termini take her hand, place his penis on it, and then "mov[e] . . . [her] hand up and down his penis." When she felt his penis, she "froze." After about "five or six minutes[,]" Termini left the room for about "[a] minute and a half" to "two minutes" before returning, when he resumed "doing what he was doing previously." Although she was "not sure if he had ejaculated or not[,]" Tessa later recalled, he "wiped [her] hand off with his robe," then left the room.

¶10            After Termini went to work that day, Tessa told her mother what Termini had done. Together, they watched video from the camera in Tessa's room.

¶11            When Termini returned home from work, Maria confronted him. He denied Tessa's account of what he had done earlier that day. Maria offered to show him the video, but Termini declined to watch it.

¶12            Maria did not call the police, testifying that she left it to Tessa to decide whether to "com[e] forward[.]" Tessa deliberated for about a

---

[2] Tessa could not recall when the third incident occurred, testifying simply that it "happened over in kind of November, December[.]"

week, later explaining that she hesitated to make such an accusation against someone who had been a father figure to her. Eventually, however, she decided to contact the police. The officer who initially interviewed her did not take possession of the camera, but instead provided Tessa with a link that allowed her to upload sixteen video clips of the events of January 18, 2022, to a law enforcement digital evidence platform known as "evidence.com," where they were stored and available for download by officers with the Surprise Police Department.

¶13       Detective Alyssa DeFazio interviewed Tessa and Maria and then arranged for a confrontation call between Tessa and Termini. When, during the call, Tessa asked him to explain his actions, Termini did not deny committing sexual acts upon her while she slept. Instead, he claimed that he did not "remember" doing so. When Tessa asked, "How is [it] that you don't remember?", Termini responded that he needed to see a "counselor" or a "psychiatrist" because "they have a way of helping you think and understand what your thoughts are and what you don't remember." When Tessa again asked him to explain his actions, Termini replied, "I don't know. I really wish I had an answer for you but I don't." Tessa insisted that she and her mother were "both owe[d] explanations," adding, in an apparent reference to her mother's prior experience as the victim of abuse, that Maria had "been through something like this before." Termini replied that he "want[ed] to go see a head doctor."

¶14       Police officers arrested Termini in March 2022, and Detective DeFazio and another detective interviewed him. Again, Termini did not deny committing the sexual acts Tessa described. On the contrary, he stated, "[a]s much I've been told, yes, it happened. There's video." He insisted, however, that he did not "remember" committing the acts. When one of the detectives expressed skepticism about Termini's claimed lack of memory, the following exchange occurred:

> Detective: Well, isn't that convenient? Isn't that the easy thing to say?
>
> Termini: Not for me. In fact, for me and based on my relationship with my family, it would be easier to tell them that I did this, because I know that my wife has lived as a survivor for all these years. And I know that one of her big deals is that she never got answers for why.

¶15       In May 2022, a grand jury indicted Termini on two counts of sexual assault, class 2 felonies in violation of A.R.S. § 13-1406, and three

counts of sexual abuse, class 5 felonies in violation of A.R.S. § 13-1404. The two sexual assault counts related to Termini's actions on January 18, 2022; the other three counts were based on the three prior incidents.

**¶16** The case was pending for over a year before Termini moved to dismiss the indictment, asserting that it was the product of perjured testimony. According to Termini, Detective DeFazio misled the grand jurors by leading them to believe that sexually assaultive acts could be seen on the video from January 18, 2022, even though she and the prosecutor both knew that "no video shows any unlawful contact between [Termini] and [Tessa]." After an evidentiary hearing at which DeFazio testified, the superior court found that the State's presentation to the grand jury was "free of bad faith or intentionally misleading conduct," and so denied Termini's motion to dismiss the indictment.[3]

**¶17** At a defense interview, Maria was asked questions about the video camera. She stated that she purchased it from Amazon, but was unable to recall its make and model. After the interview, Maria provided the camera and its memory card to the police in September 2023. As DeFazio later testified, she found over 1,000 additional video clips on the memory card.

**¶18** In mid-October 2023, the State disclosed to the defense that the camera was in its possession and available for examination. The record does not make clear, however, whether either Termini's counsel or his expert examined it. In December 2023, the State disclosed a forensic image of the memory card with the additional video clips. There is no dispute that the additional clips contain no incriminating footage.

**¶19** When Maria provided the camera to the police, she also turned over a copy of the Amazon purchase receipt. The State did not disclose the Amazon receipt, however, until shortly before the trial began in mid-June 2024. Termini moved to dismiss the charges under Arizona Rule of Criminal Procedure ("Criminal Rule") 15.7 based on the late disclosure of the receipt, asserting that until its disclosure Termini had been unable to determine "the camera's make and model." According to Termini, "knowing the make and model of the camera was necessary to

---

[3] Termini moved, in the alternative, that the case be remanded for a new determination of probable cause. When the court denied that request, too, Termini sought relief by special action. *See Termini v. Kiefer*, 1 CA-SA 24-0130. This Court accepted jurisdiction but denied relief. Termini's request that the case be remanded is not, therefore, at issue in this appeal.

understand how the device operates, including its recording capabilities, storage methods, and any potential for tampering or deletion of footage." Dismissal was warranted, he contended, because the late disclosure of the Amazon receipt left him unable to "verify[] the authenticity of the video evidence" or "identify[]" possible "tampering," thus denying him "a fair trial." Termini supported his motion to dismiss with the declaration of his digital forensics expert, who opined that "the device model identified in the receipt" could have led to "data of evidentiary value relating to the camera," including "how the camera was configured" and "who had access" to it.

¶20 At oral argument, the superior court asked Termini's counsel why he did not file a motion to compel the disclosure of the Amazon receipt. Defense counsel replied, "I didn't think it existed," explaining that he was previously unaware that Maria had provided the receipt to the State. The court denied the motion, finding no prejudice from the timing of the disclosure of the receipt and holding that "this issue . . . could have been or should have been litigated long ago prior to the eve of trial if you wanted more information that wasn't provided." The receipt was later admitted in evidence at trial by stipulation.

¶21 The morning that trial began in June 2024, Termini filed a motion to dismiss the indictment on the basis that the police "did not seize the nanny camera" at the outset of the investigation, instead "relying solely on what [Tessa] selectively uploaded." According to Termini, the police's failure to seize the camera, or to "collect and preserve . . . data from the third-party cloud service," "severely hindered [his] ability" to "challenge" the video evidence, thereby "compromis[ing his] right to a fair trial." The court denied Termini's motion.

¶22 A six-day jury trial proceeded at which Tessa, Maria, DeFazio, and other law enforcement officials testified. The recordings of the confrontation call and Detective DeFazio's interview of Termini were played for the jury.

¶23 Video footage from January 18, 2022 was also presented. Because the camera's recording function was triggered by a motion sensor, the video footage is in the form of multiple discrete clips ranging in length from 10 seconds to one minute, separated by brief gaps. Although, as the superior court later determined, the video clips are of "poor quality," Termini can be seen entering Tessa's darkened bedroom at 3:15 a.m. and standing next to her bed with his back to the camera. Termini exits the room at 3:23 a.m. and then returns in less than a minute, when he again stands

6

next to, and then sits on, Tessa's bed before departing again at 3:28 a.m. Termini's back is generally to the camera, and the movement of his hands while he is standing at Tessa's bed cannot be seen.

¶24        When asked about the video clips, Tessa described them as showing "a man standing over his daughter's bed," but acknowledged that they do not depict "a crime" being committed. Maria, by contrast, testified that the video clips show Termini using Tessa's hand in a masturbatory manner. When asked if Termini's penis can be seen in the footage, Maria answered, inaccurately, in the affirmative.

¶25        After the State rested, Termini moved for judgment of acquittal under Criminal Rule 20 on the two sexual assault counts. Conceding "that there probably is substantial evidence" to support the "three sexual abuse charges" because no evidence "directly controvert[ed]" Tessa's testimony about the first three incidents, Termini argued that "inconsistencies" in Tessa's testimony about his acts on January 18, 2022, coupled with the fact that the video clips "don't show" any sex act, preclude any jury from "conclu[ding] that sex assault happened beyond a reasonable doubt." The court denied his Criminal Rule 20 motion.

¶26        Termini presented no evidence. In closing argument, defense counsel pointed out to the jurors that the video clips show "no sex act," and, in fact, show nothing more than Termini "coming into [Tessa's] room." "Nothing in the video," he argued, "supports the claims of inappropriate behavior." Defense counsel further cast doubt on the plausibility of Tessa's allegations by pointing out that she "waited eight days to call the police" after the events of January 18, 2022. He further challenged Maria's credibility, noting that Maria claimed that she "saw . . . things" in the video clips that simply aren't there.

¶27        The jury convicted Termini as charged.

¶28        Termini moved for a new trial on all counts, alleging that "inconsistencies in [Tessa's] testimony and the lack of concrete evidence" left "substantial doubt" about his guilt. The court denied his new trial motion.

¶29        The superior court sentenced Termini to two consecutive seven-year prison terms on the sexual assault counts, to run concurrently with 1.5-year terms on two of the sexual abuse counts, followed by lifetime supervised probation for the third sexual abuse count.

¶30            Termini timely appealed. We have jurisdiction pursuant to Article 6, Section 9 of the Arizona Constitution and A.R.S. §§ 12-120.21, 13-4031, and 13-4033(A).

## DISCUSSION

### I.    Denial of Motion to Dismiss Based on Alleged Perjury in Grand Jury Testimony

¶31            Termini argues that the superior court erred in denying his motion to dismiss the indictment based on Detective DeFazio's testimony, asserting that the court's ruling forced him to stand trial on an indictment that was based on perjury in violation of his due process rights. *See United States v. Basurto*, 497 F.2d 781, 785 (9th Cir. 1974) ("[T]he Due Process Clause of the Fifth Amendment is violated when a defendant has to stand trial on an indictment which the government knows is based partially on perjured testimony, when the perjured testimony is material, and when jeopardy has not attached."). According to Termini, DeFazio "lied to the grand jury" by testifying that on January 18, 2022, he "engaged in sex acts" with Tessa that were "captured on video" even though DeFazio "knew" that the video clips "did not show a sex act." The prosecutor's failure to correct DeFazio's "false or misleading" testimony, he concludes, constituted misconduct requiring the dismissal of the indictment under *Basurto* and its progeny.

¶32            "A defendant alleging prosecutorial misconduct in a grand jury proceeding generally must seek relief from an adverse trial court ruling through special action rather than waiting to raise such issues on appeal." *State v. Snelling*, 225 Ariz. 182, 186, ¶ 11 (2010). An exception to this rule exists, however, "when a defendant has had to stand trial on an indictment which the government knew was based partially on perjured, material testimony." *Id.* (citation omitted). This Court has jurisdiction, therefore, to consider, on direct appeal, Termini's claim that his indictment was based on perjured, material testimony. *See State v. Moody*, 208 Ariz. 424, 440, ¶ 31 (2004) ("[O]n appeal we will review the indictment only to determine whether it was based on perjured, material testimony.").

¶33            A defendant seeking dismissal of an indictment on due process grounds bears the "difficult burden" of showing that "the prosecutor engaged in flagrant misconduct that deceived the grand jury or significantly impaired its ability to exercise independent judgment." *United States v. Al Mudarris*, 695 F.2d 1182, 1185 (9th Cir. 1983) (citation omitted). We review the denial of a motion to dismiss an indictment for an abuse of discretion, *State v. Pecard*, 196 Ariz. 371, 376, ¶ 24 (App. 1999), deferring to

the court's factual findings unless they are clearly erroneous, *see*, *e.g.*, *State v. Buccini*, 167 Ariz. 550, 554 (1991) (holding that "a trial court's finding on whether the affiant deliberately . . . excluded material facts" from search warrant affidavit "is a factual determination, upheld unless clearly erroneous" (citation modified)).

¶34        Perjury is a "false sworn statement in regard to a material issue" when the person making the statement "believe[s] it to be false." A.R.S. § 13-2702(A). Whether a person knowingly gave a false answer to a question "generally turns on the [person's] understanding of the question." *State v. Fodor*, 179 Ariz. 442, 452 (App. 1994) (citation omitted). Ambiguity in testimony does not, by itself, support the conclusion that the witness committed perjury. *Id.* at 452-53 (vacating perjury conviction based on witness's answer to ambiguous question asked during grand jury proceedings); *see also State v. Gwen*, 1 CA-CR 18-0775, 2020 WL 207072 at *2, ¶ 9 (Ariz. App. Jan. 14, 2020) (mem. decision) ("Contradictions and changes in a witness's testimony alone do not constitute perjury and do not create an inference, let alone prove, that the prosecution knowingly presented perjured testimony." (citation omitted)).

¶35        In her testimony before the grand jury, Detective DeFazio recounted what Tessa had reported about Termini's actions on the four dates in question. After the prosecutor asked DeFazio about the first three incidents, the questioning then turned to the events of January 18, 2022. DeFazio's testimony about those events began with the following exchange:

> Prosecutor: Then [Tessa] told the officers of a fourth event, incident that occurred in January; correct?
>
> DeFazio: Yes.
>
> Prosecutor:  And that was January 18th, 2022?
>
> DeFazio: Yes, ma'am.
>
> Prosecutor: That's the incident that was caught on camera; correct?
>
> DeFazio: Yes, ma'am.

¶36        Defazio testified about Tessa's description of Termini's actions in entering her bedroom, placing her hand around his penis, leaving the room, and then returning and again placing her hand around his penis. DeFazio also testified that she had reviewed the video clips from the camera

in Tessa's bedroom. DeFazio's testimony on this point ended with this exchange:

> Prosecutor: And, again, this is the incident on the video; correct?
>
> DeFazio: Correct.

¶37         The video footage itself was not shown to the grand jury.

¶38         At the evidentiary hearing on Termini's *Basurto* motion, DeFazio testified that during the grand jury proceedings she gave truthful answers to all questions put to her. When asked whether she intended to mislead the grand jury into believing that Termini's sex acts on January 18, 2022, were captured on video, DeFazio testified, "Absolutely not." When asked to explain her testimony that the events of January 18, 2022, were "caught on camera," she replied that she interpreted the question as intending to distinguish the events of that night from the three prior incidents for which no video evidence existed. "I didn't say or imply," she testified, that a sex act "was seen on the camera." After the hearing, the superior court found no "bad faith or knowing use of false or misleading testimony by the State before the grand jurors," determining that Defazio "answered questions asked of her in a truthful and accurate manner." We will not re-weigh this finding. *State v. Olquin*, 216 Ariz. 250, 252, ¶ 10 (App. 2007) (appellate court will "defer to the trial court's assessment of witness credibility because the trial court is in the best position to make that determination"). Instead, we affirm, as supported by evidence, the court's denial of Termini's *Basurto* motion based upon its finding that DeFazio did not commit perjury in her grand jury testimony.

¶39         The State argues, in the alternative, that this Court should affirm the denial of Termini's motion to dismiss the indictment because the motion was not brought within the time limit prescribed in court rules. *See* Ariz. R. Crim. P. 12.9(b). Because Termini has failed to make the showing required to obtain relief under *Basurto*, we need not address the State's alternative argument.

## II.      Denial of Motion to Dismiss Prospective Juror for Cause

¶40         Jury selection began with prospective jurors being required to answer a written questionnaire. In her answers, Prospective Juror 65 wrote, among other things, that "sexual abuse of any kind is incredibly serious and a traumatic experience," noting that her father and aunts were abused by their father. Prospective Juror 65 also indicated that she had been "a victim

as an adult" at the hands of a past romantic partner, although she did not identify the precise nature of the abuse she suffered.

¶41          Out of the presence of the rest of the panel, the court asked Prospective Juror 65 if she was "favoring the victim without having heard anything yet[.]" Prospective Juror 65 admitted that she "kind of . . . felt" that way "initially[.]" She went on to say, however, that after "thinking about it," she "became more in tune with understanding the importance of being neutral[.]" When the court asked her if she could "set aside" the experiences with abuse that she and her family have "gone through," keep "an open mind[,]" and base her verdict "on what the actual evidence is[,]" Prospective Juror 65 said, "Absolutely." When defense counsel asked if her "experiences" with abuse would make her "more likely to believe a victim[,]" she answered, "No." Defense counsel moved to strike Prospective Juror 65 for cause, asserting that although the juror stated that she could "be fair," her status as "a victim herself" was "cause to be stricken." The superior court denied the motion. She was seated on the jury as Trial Juror 13.

¶42          Termini argues that the superior court erred in refusing to strike Prospective Juror 65, asserting that "her initial reaction to the case, her prior abuse, and her uncertainty of whether her position aligned more closely to the victim" showed that she could not be fair and impartial.

¶43          "A criminal defendant has a right to a fair and impartial jury." *State v. Lucas*, __ Ariz. __, __, ¶ 22, 578 P.3d 822, 826 (App. 2025) (citation omitted), and so the trial court must excuse a prospective juror "if there is a reasonable ground to believe that the juror . . . cannot render a fair and impartial verdict." Ariz. R. Crim. P. 18.4(b). "A juror is not impartial and should be excused for cause when the juror indicates a predisposition for or against a party or witness." *Lucas*, __ Ariz. at __, ¶ 22, 578 P.3d at 826 (citation omitted). The party seeking the dismissal of a prospective juror for cause bears the burden of showing that he or she "lacks impartiality." *Wainwright v. Witt*, 469 U.S. 412, 423 (1985). The challenging party cannot meet this burden merely by showing that a prospective juror had previously been a crime victim, *State v. Johnson*, 247 Ariz. 166, 199, ¶ 126 (2019), that the prospective juror's "assurances of impartiality" were not "couched in absolute terms," *State v. Hoskins*, 199 Ariz. 127, 139, ¶ 37 (2000), or even that the prospective juror has "preconceived notions concerning the defendant's guilt[,]" *State v. Comer*, 165 Ariz. 413, 426 (1990). Instead, the challenging party "must show the potential juror is unable to lay aside preconceived notions and render a fair and impartial verdict based on the evidence presented at trial." *Id.*

¶44         In assessing a prospective juror's fitness to serve, the trial court must consider not only *what* the juror says during voir dire, but *how* he or she says it. *Gomez v. United States*, 490 U.S. 858, 874-75 (1989) ("To detect prejudices, . . . [t]he court . . . must scrutinize not only spoken words but also gestures and attitudes of all participants to ensure the jury's impartiality."). Because a trial court, unlike a reviewing court, is able to "observe and assess the juror personally," a reviewing court must defer to the trial court's determination of the juror's impartiality. *State v. Colorado*, 256 Ariz. 97, 102, ¶ 23 (App. 2023); *see also State v. Smith*, 182 Ariz. 113, 115 (App. 1995) ("What the juror actually conveyed in the moment of speaking is so dependent on demeanor and intonation as to be inaccessible to a reviewing court."). A trial court's determination of a prospective juror's impartiality will not be disturbed, therefore, "absent a clear showing of abuse of discretion." *State v. Reasoner*, 154 Ariz. 377, 384 (App. 1987).

¶45         Prospective Juror 65 stated that she understood the importance of remaining neutral and waiting until all of the evidence had been presented before making a judgment. She expressly denied that her own experiences would predispose her to credit a victim's testimony. Giving the required deference to the court's assessment of a prospective juror's credibility, we cannot say that the superior court abused its discretion in denying Termini's motion to strike Prospective Juror 65 for cause. *Reasoner*, 154 Ariz. at 384 ("Even though a juror may be concerned about his ability to be fair, when he ultimately assures the court that he can be objective, this will suffice and a trial judge does not err in refusing to strike such a juror for cause.").

III.    **Evidentiary Rulings Regarding Maria's Prior Victimization**

¶46         The record reveals that Maria is a survivor of sexual abuse. At the beginning of the police investigation, when an officer informed Maria of the availability of support services for crime victims, Maria responded, "I've been a victim myself, so I know." During her confrontation call with Termini, Tessa referred to her mother's past victimization when she reminded Termini that Maria had "been through something like this before." And during his police interview, Termini, too, referred to Maria's victimization when he stated, "I know that my wife has lived as a survivor for all these years. And I know that one of her big deals is that she never got answers for why."

¶47         Before trial, the State moved in limine to preclude Termini from asking Maria about, or otherwise presenting evidence of, Maria's past victimization, arguing that such evidence was both irrelevant and

inadmissible under Arizona Rule of Evidence ("Evidence Rule") 401 and 403. In response, Termini argued Maria's prior victimization was relevant because it "could influence her perception of events" and explain her actions "in response to her daughter's allegations." According to Termini, evidence that Maria had been victimized herself "directly impacts her credibility[.]"

¶48　　　　The superior court precluded Termini from asking Maria or Tessa about Maria's past victimization or offering testimony of his own on that point. The court further ordered that the recording of Termini's police interview be redacted to remove any references to his wife as a "survivor." The court did not, however, order the redaction of Tessa's reference to her mother's victimization from the recording of the confrontation call, which was played in full for the jurors.

¶49　　　　On appeal, Termini argues that the superior court erred by precluding him from offering evidence of Maria's prior victimization, asserting that such evidence was admissible to establish Maria's "bias, motive, and prejudice[.]" As Termini argued to the superior court, evidence of Maria's prior victimization could be used to impeach her testimony by showing that Maria "might feel like she needs to protect her daughter because this has happened to [Maria] before[.]"

¶50　　　　Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence[.]" Ariz. R. Evid. 401. The superior court may exclude relevant evidence "if its probative value is substantially outweighed by danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Ariz. R. Evid. 403. We review the preclusion of evidence for an abuse of discretion. *State v. Herrera*, 232 Ariz. 536, 549, ¶ 38 (App. 2013).

¶51　　　　Termini has failed to show that the fact that Maria was the victim of prior abuse makes any fact of consequence in this case more or less probable. *See* Ariz. R. Evid. 401. Certainly, evidence that a third party victimized Maria in the past does not make Termini's assaultive acts against Tessa any more or less probable. Likewise, evidence of Maria's prior victimization sheds no light on the credibility of either her testimony or Tessa's. *See Morris v. State*, 802 S.E.2d 13, 17 (Ga. App. 2017) (trial court did not abuse its discretion in excluding evidence that victim's father suffered sexual abuse as a child because "there is no logical link between the fact that victim had a father who also claimed to be a victim of sexual abuse and a conclusion that the victim might therefore be an unreliable witness."

(internal quotations omitted)). Although Termini asserts that Maria's past victimization was relevant to explain why Maria "react[ed] to [Tessa's] claims in the manner she did[,]" Maria's reaction to her daughter's disclosure has no bearing on whether the disclosure was true. Similarly, although Termini asserts that Maria's prior "experience could influence her perception of events[,]" he does not explain how Maria's perception of events supports or undermines the truth of Tessa's allegations. Likewise, Maria's statement to an officer about her prior experience as a victim establishes simply that Maria was aware of the availability of support services for crime victims, a fact that is irrelevant to the charges against Termini.

¶52        Termini suggests that Maria's prior victimization was relevant because it helped explain his statements to Tessa during the confrontation call. According to Termini, Tessa "used" her mother's victimization as "a tactic" to "try and get [Termini] to admit to something." But the confrontation call was played for the jurors in full, and so the jurors were able to review the entire exchange and draw whatever conclusions they found warranted.

¶53        And even if Maria's prior victimization could be said to have some marginal relevance, any such relevance was outweighed by countervailing Rule 403 considerations. *See State v. Zuck*, 134 Ariz. 509, 513 (1982) (noting that Rule 403 "gives courts the power to protect witnesses against cross-examination that does little to impair credibility, but that may be invasive of their privacy[,]" and that "[t]he court may prevent cross-examination into collateral matters of a personal nature having minor probative value").

¶54        Finally, any error in the court's preclusion order was rendered harmless by the fact that the recording of the confrontation call, including Tessa's reference to her mother's victimization, was admitted in its entirety. *See State v. Carlos*, 199 Ariz. 273, 279, ¶ 24 (App. 2001) (noting that the erroneous preclusion of evidence is harmless if it "would have been merely cumulative of other evidence in the case").

¶55        In the alternative, the State asserts that Arizona's Rape Shield Law, A.R.S. § 13-1421, precluded inquiry into Maria's prior victimization. Because we hold that the evidence was properly precluded on other grounds, we decline to address this alternative argument.

IV.   **Denial of Motions to Dismiss for Alleged Discovery Violations**

   A.   **Disclosure of Amazon Receipt on the Eve of Trial**

**¶56**        Termini argues that the late disclosure of the Amazon receipt prejudiced his preparation for trial by leaving him in the dark about the make and model of the camera until the eve of trial. Without knowing the camera's make and model, he asserts, he was unable to determine "what videos were taken by the camera and saved, how they were taken or saved, and how the device actually operated[.]" He contends that the State's delay in disclosing the camera's make and model made it "impossible" for him to "forensically analyze" the videos, which were "the most critical part of the [State's] case." In response, the State asserts the delay in disclosing the Amazon receipt violated neither court rule nor the State's constitutional disclosure obligations. The State further asserts that its delay in disclosing the receipt was harmless since Termini had other means to determine the make and model of the camera. Indeed, the State contends, Termini's counsel and his expert could have examined the camera "months before trial, but never went to look at" it.

**¶57**        Criminal Rule 15 requires the State, within thirty days after arraignment, to disclose, *inter alia*, "all documents," "electronically stored information[,]" and "tangible objects" that it intends to use at trial or that purportedly belong to the defendant. Ariz. R. Crim. P. 15.1(b)(5), (c). The State must also disclose "all existing material or information that tends to mitigate or negate the defendant's guilt or would tend to reduce the defendant's punishment[.]" Ariz. R. Crim. P. 15.1(b)(8). If the court finds that a disclosure obligation has been violated, the court "must order disclosure as necessary and impose an appropriate sanction, unless the court finds that . . . the failure to comply was harmless[.]" Ariz. R. Crim. P. 15.7(b)(1). Absent an abuse of discretion, we will not disturb the superior court's decision to not impose a sanction. *State v. Medina*, 244 Ariz. 361, 363, ¶ 3 (App. 2018) (citation omitted). An abuse of discretion occurs if "no reasonable judge would have reached the same result under the circumstances." *State v. Armstrong*, 208 Ariz. 345, 354, ¶ 40 (2004) (citation omitted).

**¶58**        The State did not intend to offer the Amazon receipt as an exhibit at trial, nor did the State contend that it belonged to Termini. Ariz. R. Crim. P. 15.1(b)(5), (c). Likewise, the contents of the receipt did not "mitigate or negate" Termini's guilt or "tend to reduce [his] punishment[.]" Ariz. R. Crim. P. 15.1(b)(8). We agree with the State, therefore, that Criminal Rule 15 did not require the State to disclose the receipt.

¶59        As Termini correctly notes, constitutional due process requirements impose disclosure obligations on prosecutors apart from the requirements of court rules. *See Brady v. Maryland*, 373 U.S. 83 (1963). But *Brady* provides no remedy when, as here, evidence that was disclosed late is nonetheless presented to the jury at trial. *See State v. Bracy*, 145 Ariz. 520, 528 (1985) ("When previously undisclosed exculpatory information is revealed at the trial and presented to the jury, there is no *Brady* violation."); *State v. Jessen*, 130 Ariz. 1, 4 (1981) (same). Here, the Amazon receipt was admitted at trial. *Brady* provides no remedy for the late disclosure of an exhibit that was, in fact, admitted at trial and presented to the jury. *Bracy*, 145 Ariz. at 528; *Jessen*, 130 Ariz. at 4.

¶60        In any event, Termini fails to show prejudice from the timing of the disclosure of the Amazon receipt. Termini's contention that he had no way to ascertain the camera's make and model without the receipt overlooks the fact that the camera itself was available to Termini's counsel and his expert months before trial. Alternatively, Termini could have obtained a copy of the purchase receipt by subpoena to Amazon. Nothing in the record indicates Termini made any effort to do so. Because the record makes clear that Termini could have determined the make and model of the camera by pursuing other avenues, we affirm the superior court's determination that the delay in disclosing the Amazon receipt was harmless. *Cf. State v. Young*, 2 CA-CR 2020-0087, 2021 WL 5542080 at *6, ¶ 24 (Ariz. App. Nov. 26, 2021) (mem. decision) (holding that trial court did not abuse discretion in denying defendant's requested jury instruction regarding State's alleged failure to preserve material evidence because "nothing in the record indicates [defendant] made any independent attempt to obtain the [evidence] he now argues was key to his defense").

¶61        Further, nothing but speculation supports Termini's assertion that he could have obtained other, unidentified evidence that would have been exculpatory had he learned the make and model of the camera sooner. *See State v. Acinelli*, 191 Ariz. 66, 71 (App. 1997) (holding that speculation that officers' personnel files may contain exculpatory information does not impose disclosure duty on the State); *see also State v. Elliott*, No. 1 CA-CR 17-0544 PRPC, 2018 WL 1124234 at *2, ¶ 9, n. 1 (Ariz. App. Mar. 1, 2018) (mem. decision) (rejecting defendant's claim for post-conviction relief following guilty plea based on failure to conduct DNA testing of evidence taken from the scene, because claim was based on speculation that DNA test results would have been exculpatory). The superior court did not err in denying Termini's motion to dismiss due to the disclosure of the Amazon receipt on the eve of trial.

### B.     Failure to Seize Camera or Gather Metadata

**¶62**         Termini argues that the superior court erred in denying his motion to dismiss due to the State's failure to take possession of the camera at the outset of the investigation or gather and preserve its metadata. The metadata "would have showed if the videos had been modified[,]" Termini asserts, and the failure to secure the metadata "allow[ed] the State to present potentially modified or manipulated evidence without the defense ever being able to determine its accuracy."

**¶63**         As the State correctly argues in response, the State generally "does not have an affirmative duty to seek out and gain possession of potentially exculpatory evidence." *State v. Rivera*, 152 Ariz. 507, 511 (1987). A failure-to-gather claim, therefore, is not cognizable unless the police act in bad faith by failing to collect evidence that is both obviously exculpatory and reasonably within its grasp. *See Arizona v. Youngblood*, 488 U.S. 51, 58 (1988) ("[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law."); *State v. Havatone*, 159 Ariz. 597, 599 (App. 1989) ("[T]he state may choose not to gather or preserve certain evidence and, absent bad faith, there is no constitutional violation.").

**¶64**         In his briefing on appeal, Termini does not assert that the police acted in bad faith by failing to secure the camera at the outset of the investigation, or by failing to gather metadata. Further, there is no evidence that any exculpatory information would have been obtained from the metadata. Absent such a showing, the officers' failure to gather the camera until September 2023, and their failure to gather metadata, entitles Termini to no relief. *Havatone*, 159 Ariz. at 599; *see also State v. Beloat*, 1 CA-CR 15-0254, 2015 WL 8926313 at *2, ¶¶ 10-12 (Ariz. App. Dec. 15, 2015) (mem. decision) (rejecting defendant's challenge to his convictions for narcotics trafficking based on State's failure to record drug transactions or gather records of phone calls relating to the transactions; "The State was not required to gather audio or video recordings, phone records, text records or any other evidence in this case.").

## V.     Denial of Rule 20 Motion for Judgment of Acquittal and Rule 24 Motion for New Trial

**¶65**         Termini asserts that the court erred in denying his Criminal Rule 20 motion for judgment of acquittal on the two sexual assault counts and his Criminal Rule 24 motion for a new trial on all counts.

¶66          Criminal Rule 20 requires a trial court to enter a judgment of acquittal at the conclusion of the State's case-in-chief "if there is no substantial evidence to support a conviction." Ariz. R. Crim. P. 20(a)(1). Substantial evidence is "proof that reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt." *State v. West*, 226 Ariz. 559, 562, ¶ 16 (2011) (citation modified). In viewing the evidence in the light most favorable to the prosecution, "the relevant question is whether . . . *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt[.]" *State v. Mathers*, 165 Ariz. 64, 66 (1990) (citation omitted). "When reasonable minds may differ on inferences drawn from the facts, the case must be submitted to the jury, and the trial judge has no discretion to enter a judgment of acquittal." *State v. Andersen*, 255 Ariz. 320, 323, ¶ 7 (App. 2023) (quoting *State v. Lee*, 189 Ariz. 590, 603 (1997)). We review the denial of a Criminal Rule 20 motion *de novo. Id.*

¶67          Criminal Rule 24 provides in part that "[t]he court may grant a new trial . . . if . . . the verdict is contrary to law or the weight of the evidence[.]" Ariz. R. Crim. P. 24.1(c)(1). The rule thus allows a trial court to set aside "an arbitrary or unjust verdict" and order a new trial. *State v. Fischer*, 242 Ariz. 44, 51 ¶ 22 (2017). When reviewing the denial of a motion for new trial, an appellate court does not re-weigh the evidence. *Id.* at 52, ¶ 28. Instead, an appellate court considers only whether "substantial evidence exists to support the trial court's determination." *Id.* at 52, ¶ 31. "A denial of a motion for new trial will be reversed only when there is an affirmative showing that the trial court abused its discretion and acted arbitrarily." *State v. Mincey*, 141 Ariz. 425, 432 (1984).

¶68          Tessa testified about Termini's actions during the first three incidents. She further testified about his actions on January 18, 2022, describing that he took her hand and closed it around his penis, left the room, then returned and did it again. Tessa's testimony alone is sufficient to support the convictions for all of the charged offenses. *See, e.g.*, *State v. Williams*, 111 Ariz. 175, 177-78 (1974) ("A conviction may be had on the basis of the uncorroborated testimony of the prosecutrix unless the story is physically impossible or so incredible that no reasonable person could believe it."); *State v. Manzanedo*, 210 Ariz. 292, 293, ¶ 3 (App. 2005) (holding that the testimony of a single witness, though uncorroborated, was enough to support defendant's conviction).

¶69          Noting that Tessa admitted that she was groggy at times after taking medication and sleep aids, Termini asserts that Tessa's purported "altered state of consciousness raises concerns about her memory." But

because the jury was "entitled to believe whichever witnesses it found credible[,]" *id.*, questions about the accuracy and reliability of Tessa's testimony were for the jury, not the court, to resolve. *State v. Allen*, 253 Ariz. 306, 341, ¶ 109 (2022) ("Although a record may contain conflicting evidence, the jury is tasked with weighing the evidence and determining the credibility of the witnesses." (citation modified)); *see also State v. Ortega*, 220 Ariz. 320, 330, ¶ 34 (App. 2008) (holding that whether witness's testimony "was unreliable because it was inconsistent" was "an issue of credibility for the jury to resolve").

¶70        Termini asserts that the fact that "[t]he videos did not show a sex act" undermines the credibility of Tessa's testimony. But although no sexual acts can be seen in the video footage, nothing in the footage refutes Tessa's testimony. On the contrary, the video footage shows that Termini entered her room, stood by her bed, left the room and then returned. The footage thus corroborates Tessa's account of that night's events even if the video did not capture all of the conduct that Tessa described.

¶71        Finally, Termini asserts that the Amazon receipt undermines the reliability of Tessa's account of the relevant events. Termini argues that Tessa's testimony that the third incident occurred some time in November or December 2021, and that she set up the camera beforehand, cannot be reconciled with the fact that the receipt shows the camera was not even ordered until December 28. According to Termini, the receipt shows that Tessa "was wrong about the dates." But the receipt was admitted in evidence, and Termini argued in closing that the date of the receipt casts doubt on Tessa's credibility. Any conflict between Tessa's testimony and the date on the receipt were matters for the jury, and not the court, to resolve. *See State v. Linden*, 136 Ariz. 129, 140 (App. 1983) (recognizing that when "inconsistencies" in witness testimony are "apparent[,]" the "credibility" of the testimony is "a question for the jury").

¶72        Because substantial evidence supports Termini's convictions, the superior court did not abuse its discretion in denying his Criminal Rule 20 Motion and his Criminal Rule 24 Motion. *Mincey*, 141 Ariz. at 432.

V.    **Imposition of Consecutive Sentences for Sexual Assaults**

¶73        Termini argues that the superior court violated his right against double jeopardy by sentencing him to consecutive sentences for the two sexual assaults on January 18, 2022, asserting that the assaultive acts were "part of one continuous event" that should be "considered one offense

for the purposes of punishment." We review double jeopardy claims *de novo*. *State v. Siddle*, 202 Ariz. 512, 515, ¶ 7 (App. 2002).

¶74 The double jeopardy clauses of the United States Constitution and the Arizona Constitution prohibit multiple punishments for a single offense. U.S. Const. amend. V; Ariz. Const. art. 2, § 10. "[I]f multiple violations of the same statute are based on the same conduct," therefore, "there can be only one conviction if there is a single offense." *State v. Jurden*, 239 Ariz. 526, 529, ¶ 11 (2016). At the same time, however, a defendant who commits separate sexually assaultive acts during the course of a single attack may properly be separately punished for each one. *State v. Boldrey*, 176 Ariz. 378, 381 (App. 1993) ("Multiple sexual acts that occur during the same sexual attack may be treated as separate crimes."). Whether "a series of actions" comprises a single offense or multiple offenses for sentencing purposes depends on whether the actions "violate[] a criminal statute in sufficiently separate and distinct ways." *State v. Moninger*, 258 Ariz. 18, 22, ¶ 12 (2024) (citation modified).

¶75 Here, two sexual assault counts were based on "separate and distinct" violations of the same statute. Tessa testified that Termini entered Tessa's room while she lay asleep in bed, "cupped" her hand "with his[,]" and "started moving . . . [her] hand up and down his penis." This act constituted sexual assault. *See* A.R.S. § 13-1406 (defining "sexual assault" as "intentionally or knowingly engaging in sexual intercourse or oral sexual contact with any person without consent of such person"); A.R.S. § 13-1401 (defining "sexual intercourse" to include "masturbatory contact with the penis or vulva"). Termini then left Tessa's bedroom before returning and engaging in another act of the same nature. The temporal break in Termini's acts sufficiently establishes separate and distinct violations of A.R.S. § 13-1406. *See State v. Williams*, 182 Ariz. 548, 563-64 (App. 1995) (three acts of anal intercourse that "occurred in very rapid succession during a single episode" and "were interrupted only to change positions" were "separate crime[s] which can be punished consecutively"); *see also State v. Bell*, 1 CA-CR 24-0298, 2025 WL 3764175 at *4, ¶ 23 (Ariz. App. Dec. 30, 2025) (mem. decision) (holding that two acts of penile penetration that were "clearly separated by an intervening event" were "distinct and so may be separately punished").

¶76 In support of his position that his acts on January 18, 2022 were "part of one continuous event" that could not properly be treated "as separate acts for sentencing purposes[,]" Termini relies on *Moninger*. In *Moninger*, the defendant was charged with three counts of luring a minor for sexual exploitation after exchanging explicit text messages over a three-

day period with a police officer impersonating a minor. 258 Ariz. at 20-21, ¶¶ 3-6. After being convicted and sentenced to consecutive prison terms, the defendant appealed, arguing that his right against double jeopardy was violated when he was convicted and punished for multiple offenses. The Arizona Supreme Court agreed. Noting that "for some crimes, it is not immediately apparent . . . when one course of conduct ends and another begins[,]" the *Moninger* court determined that the evidence at trial showed nothing more than "one continuous course of conduct[.]" *Id.* at 20, 25, ¶¶ 1, 29, 34-35. Because the evidence did not show "three separate and distinct violations of the [luring] statute[,]" the *Moninger* court held, convicting the defendant of "three separate" offenses for "one" violation of the statute violated his right against double jeopardy. *Id.* at 25, ¶ 34.

¶77        *Moninger* is inapposite. The defendant in that case was subjected to multiple convictions and sentences for a single "course of conduct." *Id.* at 20, ¶ 1. Here, by contrast, the two sexual assault counts were based on distinct acts separated in time by Termini's departure from the room and subsequent return. Nothing in *Moninger* prohibits multiple punishments for two distinct acts; indeed, the *Moninger* court expressly acknowledged that "a series of distinct acts can beget several offenses—and several punishments." *Id.* Because the two sexual assault convictions were based on distinct acts, the superior court did not err in imposing consecutive sentences. On the contrary, the court was statutorily required to do so. A.R.S. § 13-1406(C) ("The sentence imposed on a person for a sexual assault shall be consecutive to any other sexual assault sentence imposed on the person at any time.").

## CONCLUSION

¶78        We affirm.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**:        JR

21